Creative 6.1-001

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREATIVE MANAGER, INC. : | |
| Plaintiff, : | |
| vs. : | Case no. 08-CV_____ (    ) |
| : | |
| SOHNAR, LTD. d/b/a SOHNAR SOFTWARE, and : | |
| JASON LANGOS (an individual) : Defendants. : | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, DILUTION, AND REQUEST FOR TRIAL BY JURY

CREATIVE MANAGER, INC., d/b/a Workamajig, Plaintiff in the above-identified cause, sues defendant, Sohnar Ltd. (a/k/a Sohnar Software) and its managing director for Sohnar North America, an individual named Jason Langos.

Plaintiff, Creative Manager, Inc., by its attorneys, and for its Complaint against Defendants, alleges as follows:

### JURISDICTION & VENUE

1) Plaintiff's claims, as more fully stated below, arise under the U.S. trademark laws, 15 U.S.C. §1114 and §1125(a), and under the laws of unfair competition and dilution of trademarks in the State of New Jersey.

1

2) Original subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331(federal question); 28 U.S.C. §1332(diversity of citizenship); 28 U.S.C. §§1338(a) and (b)(trademark); and 28 U.S.C. §1367(supplemental jurisdiction over ancillary state law claims). Personal jurisdiction is proper because the claims arise out of offers for sale and, on information and belief, completed sales made over the worldwide web, and targeting residents in the District of New Jersey. Defendants do business and *offer their product for sale* over the Internet, and on information and belief, nationwide through their web site and sales representatives. According to press releases on the Internet, Defendants been in business in the United States and do business as Sohnar North America since January 2007. Defendants have, at a minimum, *offered for sale*, and, on information and belief, have completed sales to New Jersey residents, subjecting Defendants to personal jurisdiction in New Jersey. *Zippo Mfg. Co. V. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997). Further, and **alternatively**, Defendants have also knowingly directed their tortious conduct into New Jersey by knowingly causing injury to plaintiff Creative Manager, a New Jersey-based business. *Calder v. Jones*, 465 U.S. 783(1984). Specifically, defendants have purposefully bid on and purchased plaintiff's trademark to direct traffic to defendant Sohnar's web site, effectively stealing plaintiff's customers, causing initial interest confusion, and unfairly trading off the goodwill in plaintiff's trademark. Such intentional conduct directed at plaintiff in New Jersey, where defendants had to have known the location of the company whose trademark they decided to purchase, satisfies the *effects* test set forth

by the U.S. Supreme Court for personal jurisdiction in *Calder v. Jones*. As such, Defendants have minimum contacts with the State of New Jersey, can reasonably anticipate being haled into court in New Jersey, and it would not offend traditional notions of fair play and due process to subject them to this court's personal jurisdiction. Finally, venue is properly laid in this district pursuant to 28 U.S.C. §1391 (b) & (c).

## THE PARTIES

3) Plaintiff Creative Manager, Inc., d/b/a Workamajig (hereinafter "Creative") is a corporation domiciled in the State of New Jersey, having a principal place of business located at 721 Auth Avenue, Oakhurst, New Jersey 07755. Plaintiff has been engaged in the web-based business management and workflow software business as a marketer and seller of web-based software products since 2003. Plaintiff typically caters its products and services to advertising agencies and graphic design companies.

4) Defendant, Sohnar, Ltd., d/b/a Sohnar Software is, on information and belief, a corporation domiciled in London, United Kingdom, having a place of business at 1 Glenthorne Mews, London, U.K. W6 0LJ and which, on information and belief, has been and continues doing business through a web site **Sohnar.com** since 2003, which, according to the site, offers for sale and is structured to provide business management software throughout the United States since January 2007, i.e., including in plaintiff's territory of business in New Jersey (hereinafter "Defendant" or "Sohnar"). Defendant Sohnar has offered for sale, and, on information and belief, completed sales, of said software products

and related business consulting services in this district using the plaintiff's federally-registered mark **WORKAMAJIG** to trigger its ads and web site on the worldwide web. Defendant also has a New York City office, according to its web site, located at 5 Penn Plaza, 23rd Floor, New York, New York 10001.

5) Defendant Jason Langos is an individual and U.S. citizen listed online as the contact person for Sohnar North America and is also listed online as Managing Director, and is a sales representative for Sohnar Ltd. in North America (see Exhibit A, attached hereto). Defendant Langos resides at 210 Friendship Dr., Nashville, Tennessee 37201. On information and belief, he has participated in directing and controlling the infringing activities of Defendant Sohnar Ltd. by marketing and selling Sohnar's software to customers obtained through Sohnar's illegal keyword advertising on Google using plaintiff's registered mark. On information and belief, he has also participated in illegal keyword advertising using plaintiff's registered mark on behalf of his former employer The Advantage Software Company, where he served as Marketing Director (see Exhibit A). Finally, he currently is still employed with The MediGroup Ltd. as regional sales director and, on information and belief, has also participated in illegal keyword advertising using plaintiff's registered mark on behalf of MediGroup (see Exhibit A, attached hereto). In fact, Plaintiff recently sent cease and desist letters earlier this year to these 2 other companies in the same industry as plaintiff, and these companies have agreed to cease their infringing activities without admission of liability. Mr. Langos is thus **the common link** between Defendant Sohnar, and these two

other companies. In all 3 cases that plaintiff has recently sent cease and desist letters this year regarding keyword advertising, Mr. Langos has been an employee of said company. Thus, based on the resume shown in Exhibit A, Mr. Langos has been or still is employed with all 3 companies that infringed on plaintiff's registered mark, and, on information and belief, is the common source of plaintiff's damages.

## BACKGROUND FACTS

6) In October 2007, Plaintiff Creative began using in interstate commerce the mark **WORKAMAJIG** in connection with sales of web-based and downloadable software and providing use of web-based software for business management services through its Internet-based business. Since that time, Plaintiff has been continuously and extensively using and advertising the mark **WORKAMAJIG** in connection with its software products and web-based software services since October 2007.

7) As such, plaintiff has obtained U.S. Trademark Mark Registration No. 3,912,958 for the mark **WORKAMAJIG** (See Exhibit B, annexed hereto). Said registration is valid, and subsisting and affords to plaintiff a presumption of validity, exclusive right to ownership, and exclusive right to use said mark in the United States. 15 §U.S.C. 1057.

8) Defendant Sohnar has bid on and purchased online the plaintiff's **identical** registered mark **WORKAMAJIG,** without plaintiff's permission, to trigger Sohnar's web site or Sohnar's sponsored link in the search results a prospective customer obtains on Internet search engines, including, but not necessarily limited to, the well-known Google

search engine (see Exhibit C, attached hereto). Sohnar's infringing activity has taken place in connection with the marketing and sale of its project management software and web-based business management services, the **same exact field** of business as plaintiff. Defendant Sohnar's web site makes clear that a customer can contact a member of Sohnar's sales team to purchase Sohnar's software by the telephone number or email address displayed on Sohnar's web site (see Exhibit D, attached hereto). Accordingly, offers for sale, and, on information and belief, completed sales, are actively being made to residents in this district. Defendant Langos, on information and belief, has participated in directing and controlling the infringing activities of Defendant Sohnar Ltd. by illegal keyword advertising using Plaintiff's trademark and by marketing and selling Sohnar's software to customers acquired through Sohnar's illegal keyword advertising using plaintiff's registered mark. He currently is still employed with The MediGroup Ltd. as regional sales director and has also participated in illegal keyword advertising using plaintiff's registered mark on behalf of MediGroup, a competitor of plaintiff (see Exhibit A, attached hereto). Finally, Defendant Langos has also participated, on information and belief, in illegal keyword advertising using plaintiff's registered mark on behalf of his former employer Advantage Software Company, where he served as Marketing Director (see Exhibit A).

9) Further, defendant Sohnar's domain address **www.sohnar.com** was reserved in 2003 and expires in 2009 (See Exhibit E, attached hereto). Thus, its web site has been operational for approximately over 5 years.

**Infringement**

10) The Defendants SOHNAR, Ltd. and Langos have infringed on Plaintiff's mark by offering for sale and selling web-based project management software and business management services by using the plaintiff's identical mark **WORKAMAJIG** to trigger the Sohnar web site (See Exhibit D, annexed hereto), and in the case of Defendant Langos, the Advantage Software web site and Medi Group web site. Initial interest confusion resulting from freely trading off the goodwill of another's trademark is actionable in the Third Circuit, as in many other circuits. *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F. 3d 294-295 (3d Cir. 2001).

11) Sohnar directly competes with plaintiff Creative in the same software business category. Sohnar admitted that it received at least 45 "clicks" from customers who entered the plaintiff's registered mark **WORKAMAJIG**, and claims it made no sales (see Exhibit F, attached hereto). Sohnar only disclosed data from July 30, 2008 until October 2008, and left out the period before July 30, 2008. An accounting and discovery is needed to verify damages. A typical sale resulting from such customer clicks can be in the range of $3,000 to $100,000 per sale. Even so, under the 1962 amendments to the Lanham Act deleting the term "purchasers", a completed purchase is not even necessary to cause pre-sale confusion and an actionable Lanham Act violation. *Checkpoint Systems*, 269 F. 3d 295, citing *Koppers Co. V. Krupp-Koppers GmbH* 517 F. Supp. 836, 843-44(W. D. Pa. 1981). Moreover, plaintiff incurred additional advertising costs in countering defendants illegal keyword advertising

and trademark infringement committed by defendants.

12) Creative's listing for its website "workamajig.com" typically appears as the first website search result anytime a person browsing the Internet using the Google search engine (and perhaps other engines) enters the trademark **WORKAMAJIG**. (See Ex. C, annexed herewith).

13) At the same time, Sohnar, with the assistance of Langos, has caused its own sponsored ad for its web site or regular web hyperlink to appear on the screen right next to Creative's web link anytime a customer searching the Internet for plaintiff's web site enters the term "Workamajig." Alternatively, Sohnar's web site has previously appeared right in the initial general search results next to Plaintiff's website. Plaintiff has evidence that it often has appeared first in the results. (See Exhibit C).

14) Sohnar and Langos' misappropriation of the goodwill and value of Plaintiff's trademark, **WORKAMAJIG**, by purchasing plaintiff's mark as a keyword through Google (and possibly other search engines) has caused Sohnar's sponsored ad or web link to appear right next to Plaintiff's web link (Exhibit C). By bidding on, purchasing and trading off of the identical trademark used by plaintiff, such actions have been absolutely deliberate and willful.

15) Defendant Sohnar's sponsored ad or web link is likely to cause confusion, mistake and false designation or deception to consumers regarding whether there is a connection between the two companies, or, at a minimum, actionable initial interest confusion. *CheckPoint Systems, supra; 800 JR Cigar Inc. v. GOTO.com Inc. et. al.*, 437 F.

8

Supp. 2d. 273 (D.N.J. 2006); *Soilworks v. Midwest Industrial Supply*, 575 F. Supp. 2d 1118 (D. Ariz. 2008). Alternatively, such activities have been calculated to capture consumer's initial attention on the Internet, and have caused *initial interest confusion* among plaintiff's potential customers, and, on information and belief, loss of sales sustained by plaintiff. *Soilworks v. Midwest Industrial Supply*, 575 F. Supp. 2d 1118 (D. Ariz. 2008).

16) Plaintiff has been damaged by the unlawful misappropriation of the goodwill of its trademark **WORKAMAJIG**.

17) Defendants have damaged Plaintiff's business by using the exact mark to trigger its web site and sponsored link to its web site, diluting the goodwill and strength of plaintiff's registered mark that Plaintiff has painstakingly advertised and developed.

18) Plaintiff sent a cease and desist letter to Sohnar on August 13, 2008. For the time being, defendant Sohnar has stated on November 4, 2008, that it will no longer engage in such activities and alleges that it stopped the above described activities by mid-October 2008. However, for its future protection, Plaintiff respectfully requests at the conclusion of this Complaint that a permanent injunction be granted, ordering Defendants to not engage in such infringing activities in the future, as enumerated above, including purchasing keywords from search engines under the mark **WORKAMAJIG**. Further, Defendant Sohnar has refused to comply with plaintiff's demands for an accounting and compensation for any damages and illegal profits. Accordingly, Plaintiff also requests at the conclusion of this Complaint that it be compensated for any and all lost sales, illegal profits gained by defendant, and plaintiff's

legal fees it has been forced to incur in policing and enforcing the intentional infringement of its federally-registered mark, as required by the trademark laws.

19) Such relief has not been previously requested by Plaintiff.

## COUNT 1

## TRADEMARK INFRINGEMENT
## UNDER 15 U.S.C. 1114(1)

20) Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 19 above, as if fully set forth herein.

21) Defendant's actions of *offering for sale* or selling project management/business workflow software using the identical and infringing mark **WORKAMAJIG** to trigger their web site link or sponsored link in interstate commerce, without the consent of plaintiff, has caused a likelihood of confusion, mistake, and deception in the minds of the public and business entities with plaintiff Creative Manager, Inc., and plaintiff's federally-registered mark, namely, **WORKAMAJIG.**

22) Defendants' commercial use, or participation in the using, of Plaintiff's identical registered mark **WORKAMAJIG,** in interstate commerce, has infringed on plaintiff's federally-registered mark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

23) Based on explicit information on its web site, Defendant Sohnar has been in the business of its online sales of its "traffics" brand software in the U.S. since approximately 2006. By reason of the foregoing, plaintiff has been injured in an amount not yet fully

determined, but believed to be in excess of $200,000, by way of actual losses to plaintiff and/or Defendants' illegally gained profits.

24) Defendant Sohnar purchased advertising rights from Google, and potentially other search engines, for the identical and unique mark **WORKAMAJIG** owned by plaintiff, and due to plaintiff's recognition in the online segment of the business management software industry, Defendants knew of plaintiff's mark, and intentionally infringed on said mark. Defendant Langos, as managing director of Sohnar North America, sets forth **his** background and education on **Linkedin.com** and states that he consults Sohnar's clients in connection with Sohnar's Traffic-branded software and helps with software development and services for Sohnar, including project management and accounting solutions.

25) Plaintiff notified Defendant Sohnar Ltd. by cease and desist letter on August 13, 2008 of its objection to Sohnar's infringing activities. From August 13, 2008 until mid-October 2008, Defendants failed to cease their infringing activity and actually continued to engage in their keyword advertising using Plaintiff's registered mark. It was only when Plaintiff sent a draft of a Complaint that was not yet filed that Defendant responded that it ceased its activity. Accordingly, Defendants' actions have been in bad faith, and, on information and belief, were knowing, intentional, wanton, and willful, entitling plaintiff to its money damages, up to treble money damages for any and all of plaintiff's lost sales, Defendants' illegal and unjust profits, plaintiff's attorney's fees, and the costs of this action.

## COUNT II

## FALSE DESIGNATION OF ORIGIN

## UNDER 15 U.S.C. § 1125(a)

26) Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 19 above, as if fully set forth herein.

27) Defendants' actions of exporting to the U.S., advertising, promoting, offering for sale, and/or selling web-based project management and/or business management and workflow software under the identical and infringing mark **WORKAMAJIG** in interstate commerce, without the consent of Plaintiff, is a false designation of origin, and has caused and continues to cause confusion, mistake, and deception in the minds of the public.

28) Defendants' misappropriation and commercial use of the mark, **WORKAMAJIG**, in connection with the sale or advertising in interstate commerce of web-based project management or business workflow software is likely to communicate a false designation of origin, in interstate commerce, and has infringed Plaintiff's federal trademark and service mark rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

29) By reason of the foregoing, Plaintiff has been injured in an amount not yet fully determined, but believed to be in excess of $200,000 through a combination of actual losses sustained by plaintiff and Defendants' illegal profits.

30) Due to plaintiff's notice to Defendant Sohnar and plaintiff's recognition in the

online business management software industry, Defendants knew of plaintiff's mark. As such, Defendants' actions have been in bad faith, and were knowing, intentional, wanton, and willful, entitling Plaintiff to money damages in the amount of over two-hundred thousand dollars, a full accounting of sales, up to treble money damages for plaintiff's actual lost sales, Defendants' illegal profits, plaintiff's attorney's fees, and the additional costs of this action.

## COUNT III

## NEW JERSEY UNFAIR COMPETITION

31) Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 19 above, as if fully set forth herein.

32) Defendants' actions of exporting to the U.S., advertising, promoting, offering for sale, and/or selling web-based business management/project management software by commercially using and/or advertising on Plaintiff's identical mark **WORKAMAJIG**, in interstate commerce, without the consent of Plaintiff, has caused and continues to cause confusion, mistake, and deception in the minds of the public.

33) Defendants' misappropriation of Plaintiff's mark for themselves and above-described actions have caused confusion and deception, and such actions constitute palming off, misappropriation and infringement of Plaintiff's mark **WORKAMAJIG** which is actionable under the New Jersey law of unfair competition, N.J.S.A (revised) §56: 4-1 and §56:4-2.

34) Defendants' usage of the Plaintiff's registered mark to trigger their web site link or sponsored link on the Internet for prospective customers has misappropriated the value and goodwill of the Plaintiff's mark developed with consumers.

35) By reason of the foregoing, Plaintiff has been injured in an amount not yet fully determined, but believed to be in excess of $200,000.

36) As explained in the earlier counts, Defendants' actions have been in bad faith, and, on information and belief, were knowing, intentional, wanton, and willful, entitling Plaintiff to money damages in the amount of over $200,000, **punitive damages** under New Jersey state law, profits, attorney's fees, and the costs of this action.

## COUNT IV

## TRADEMARK DILUTION UNDER N.J. STATE LAW

37) Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 19 above, as if fully set forth herein.

38) By reason of the foregoing, the use and marketing by Defendants of the **WORKAMAJIG** trademark has diluted the quality of the name and mark **WORKAMAJIG** in violation of N.J.S.A. 56:3-13.20 through blurring the distinctive quality of said mark.

39) Plaintiff owns the **WORKAMAJIG** mark, which is of a distinctive quality, and is presumed valid under 15 U.S.C. § 1057 due to federal registration.

40) The mark **WORKAMAJIG** provides an impression of being inherently distinctive in the mind of the public.

41) The aforesaid conduct of Defendants has been willful, malicious, deliberate and intended to harm the Plaintiff.

42) By reason of the foregoing, Plaintiff is entitled to all money damages, together with **punitive** damages, as authorized by New Jersey state law.

43) By reason of the foregoing, Plaintiff has been injured in an amount not yet fully determined, but believed to be well in excess of $200,000.

44) Defendants' actions have been knowing, intentional, wanton, and willful, entitling Plaintiff to money damages in the amount of over $200,000 dollars, Defendants' illegal and unjust profits, attorney's fees, and the costs of this action.

**WHEREFORE**, Plaintiff demands:

1) a permanent injunction preventing any continued infringement by Defendants' using the trademark and service mark **WORKAMAJIG**, preventing its use as a false designation of origin, and preventing continued unfair competition;

2) an accounting and award of Defendants' illegal profits and an award of money damages of over $200,000 resulting from Defendants' trademark infringement, false designation of origin, unfair competition, and dilution of Plaintiff's mark, and the trebling of such damages under the trademark laws for willful and/or bad faith infringement;

3) an award of punitive damages of over $200,000 pursuant to New Jersey state law for defendants' intentional infringement and acts of unfair competition by misappropriating plaintiff's federally-registered mark and dilution of plaintiff's federally-registered mark, reputation and goodwill;

4) an order that defendant Sohnar delete any use of the mark **WORKAMAJIG** currently in any of its **visible** and **invisible** web site pages, including its web site source code, metatags and/or URL addresses, which has diverted users of the Internet to defendant's web site, and that Defendant's refrain from such usage in the future;

5) an award of interest, Plaintiff's attorney's fees, and costs; and

6) such other and further relief as the Court deems just and equitable under the circumstances.

## REQUEST FOR JURY TRIAL

Pursuant to F.R.C.P. 38, Plaintiff hereby demands its right to a jury trial on all issues triable to a jury.

Respectfully submitted,
**Creative Manager, Inc.**

By: _____
JOSEPH E. SUTTON, Esq. (JS-9864)
(Bar No. 99-00305)
EZRA SUTTON, Esq. (ES- 2189)
**EZRA SUTTON & Associates P.A.**
Plaza 9 Bldg., 900 U.S. Hwy. 9
Woodbridge, New Jersey 07095
(732)-634-3520 PH/3511 FAX
Attorneys for Plaintiff

Dated: December 15, 2008

16

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

                                                **EZRA SUTTON P.A.**
                                                Attorneys for Plaintiff,
                                                Creative Manager, Inc.

By: _/s/ Joseph Sutton_____
      JOSEPH SUTTON, Esq.
      (JS - 9864) (Bar No. 99-00305)

Dated: December 15, 2008

17